FILED _____ ENTERED
_____ LODGED _____ RECEIVED

APR 17 2017

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JANAYA BRITTNE PERSON-ROBINSON, | * |
| Petitioner, | Criminal No. RDB-13-0663 |
| v. | Civil Action No. RDB-15-2396 |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The *pro se* Petitioner Janaya Brittne Person-Robinson ("Petitioner" or "Person-Robinson") pled guilty before this Court to Armed Bank Robbery, in violation of 18 U.S.C. § 2113(a), (d), and (f), pursuant to a Plea Agreement with the Government.[1] J., p. 1, ECF No. 54. Subsequently, this Court sentenced Petitioner to a period of incarceration of 84 months, followed by five years of supervised release. *Id.* at 2–3. Currently pending before this Court are Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, pursuant to 28 U.S.C. § 2255 (ECF No. 57), and Amended Motion to Vacate (ECF No. 67).[2] Having reviewed the parties' submissions, this Court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons discussed herein, Petitioner's Motion to Vacate

---

[1] As discussed *infra*, Petitioner and co-defendant Darrius Roszario D. Washington ("Washington") were charged via a three-count Indictment (ECF No. 1). The Indictment charged both defendants with Armed Bank Robbery, in violation of 18 U.S.C. § 2113(a), (d), and (f) (Count 1). Additionally, the Indictment charged Petitioner's co-defendant, Darrius Roszario D. Washington, with Forced Accompaniment, in violation of 18 U.S.C. § 2113(e) (Count 2), and Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Count 3).

[2] Via Order dated February 27, 2017 (ECF No. 72), this Court granted Petitioner's Motion of Inquiry (ECF No. 71), which this Court treated as a Motion for Leave to File a Reply to the Government's Response in Opposition to her Amended Motion to Vacate. This Court granted Petitioner thirty (30) days from entry of that Order to file a Reply brief. Petitioner's thirty-day filing deadline expired on March 29, 2017, and Petitioner has not filed a Reply brief.

1

(ECF No. 57) is DENIED, and Petitioner's Amended Motion to Vacate (ECF No. 67) is also DENIED.

## BACKGROUND

Pursuant to a Plea Agreement with the Government, Petitioner Janaya Brittne Person-Robinson ("Petitioner" or "Person-Robinson") has agreed that if this matter had proceeded to trial, "the Government would have proven the following facts beyond a reasonable doubt:"

On the morning of October 1, 2013, Person-Robinson and co-defendant Darrius Roszario D. Washington ("Washington") parked Washington's silver Chevrolet Impala in a parking lot near an M&T Bank branch, located at 39 Shipping Place in Dundalk, Maryland. Plea Agreement, Attachment A, p. 9, ECF No. 34. Person-Robinson had previously been a "teller-trainee" at this M&T Bank branch, so she was "familiar with the bank layout, bank procedures, and the tellers who worked at the bank." *Id.* Person-Robinson had shared her knowledge of this branch with Washington. *Id.*

At approximately 7:30 a.m., Person-Robinson and Washington approached an M&T Bank teller ("Teller 1") as that teller got out of her car in the branch parking lot. *Id.* "Washington [ ] ran up to Teller 1, pulled out a .32 caliber Iver Johnson Arms and Cycle Works revolver, held the revolver to Teller 1's head, and told her not to look at him and to unlock the door to the bank." *Id.* When Washington threatened to "blow [Teller 1's] head off," Teller 1 unlocked the door. *Id.* Once Person-Robinson and Washington had entered the bank, Teller 1 fled and called the police. *Id.*

2

Another teller ("Teller 2") was already inside the bank at that time. Person-Robinson had told Washington Teller 2's name and the name of Teller 2's child, and had informed him that Teller 2 had access to the bank's vault. *Id.* "Once inside the bank, Washington immediately approached [Teller 2] and called her by her first name." *Id.* Washington forced Teller 2 to accompany him to the vault, using the revolver, and told her to open the vault door. *Id.* "Washington told [Teller 2] that if she did not open the vault door, she would never see her son again." *Id.* Washington stated the name of Teller 2's son. *Id.* Teller 2 opened the vault door, and Washington forced Teller 2 to the floor with the revolver. *Id.* Person-Robinson removed money from the teller stations, and Washington removed money from the vault. *Id.*

Subsequently, Person-Robinson and Washington exited the bank. *Id.* They "[took] with them a canvas bag filled with $133,600 of federally insured money, which was in the care and custody of M&T Bank, got into the Silver Chevrolet Impala, and attempted to flee." *Id.* After a brief pursuit by police, both Person-Robinson and Washington were arrested. *Id.* Officers searched the vehicle and recovered the canvas bag filled with $133,600, the .32 caliber revolver used to commit the robbery, and hats and blue latex gloves, which Person-Robinson and Washington had worn during the robbery. *Id.* at 9–10. Person-Robinson and Washington both "provided statements indicating their involvement in the planning and execution of the robbery." *Id.*

Person-Robinson and Washington were both charged with Armed Bank Robbery, in violation of 18 U.S.C. § 2113(a), (d), and (f). Indictment, ECF No. 1. Additionally, Washington was charged with Forced Accompaniment, in violation of 18 U.S.C. § 2113(e)

3

(Count 2), and Brandishing a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Count 3). *Id.* Both Person-Robinson and Washington entered guilty pleas in this case, pursuant to Plea Agreements with the Government. Person-Robinson was represented by two attorneys, one privately-retained and one court-appointed. A third attorney, from the same law firm as Person-Robinson's privately-retained counsel, appeared on her behalf at a proffer session with the Government.

On May 19, 2014, Person-Robinson pled guilty to Armed Bank Robbery (Count 1), pursuant to a Plea Agreement with the Government. The Government has indicated that Person-Robinson was brought in for "outside the case cooperation," but that she did not have the kind of information the Government was looking for. Gov't. Response, Ex. 3, p. 7, ECF No. 63 [SEALED]. Accordingly, the Government did not offer Petitioner a cooperation agreement and has not at any time moved for a sentence reduction under U.S.S.G. § 5K1.1. On October 29, 2014, this Court sentenced Person-Robinson to a total period of incarceration of 84 months. *See* J., p. 1, ECF No. 54. On January 15, 2015, the United States Sentencing Commission announced a series of proposed amendments to the Sentencing Guidelines, including Amendment 794, which provides amended guidelines for economic crimes. However, Amendment 794 did not go into effect until November 1, 2015, over one year after both defendants in this case had been sentenced.

In her pending Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 57), Person-Robinson seeks a "reduction in sentence and/or a change in the method of how the balance of her sentence is served." Mot., p. 1, ECF No. 57. Person-Robinson argues ineffective assistance of counsel, in violation of her rights under the

4

Sixth Amendment to the United States Constitution. *Id.* at 1–2. Additionally, Person-Robinson claims that her sentence should be reduced because of "mitigating circumstances." *Id.* at 2–4. In her Amended Motion to Vacate (ECF No. 67), Person-Robinson argues that the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2251 (2015) "retroactively invalidates" this Court's determination that Petitioner committed a crime of violence.[3] Amended Mot., p. 1–2, ECF No. 67. Person-Robinson further claims in her Amended Motion that she is entitled to a "minor role reduction" under Amendment 794, a subsequent amendment to the United States Sentencing Guidelines. *Id.* at 2–3.

## STANDARD OF REVIEW

*Pro se* filings are "liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside or correct his sentence where: (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) the court lacked "jurisdiction to impose the sentence, . . . [(3)] the sentence was in excess of the maximum authorized by law, or [(4) the sentence] is otherwise subject to a collateral attack." 28 U.S.C. § 2255. "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

---

[3] As discussed herein, this Court did not at any time make the determination that Person-Robinson had committed a "crime of violence." Furthermore, Petitioner's *Johnson* argument is untimely as Petitioner's Amended Motion was filed over one year after *Johnson* was decided and almost two years after Judgment was entered. Accordingly, Petitioner's claim has no merit.

5

## DISCUSSION

### I. Petitioner's Ineffective Assistance of Counsel Claim

Petitioner claims that her Sixth Amendment right to effective assistance of counsel was violated by both her privately retained counsel and her court-appointed counsel. Mot., p. 1–2, ECF No. 57. Petitioner argues that her private counsel was "inexperienced with representing federal cases," which "caused [Petitioner] to [receive] a longer sentencing term." *Id.* at 1. Additionally, Petitioner claims that neither her private counsel nor her court-appointed counsel made the Government or this Court aware of Petitioner's "mitigating circumstances." *Id.* at 1–2.

To establish ineffective assistance of counsel, Petitioner must satisfy the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). First, Petitioner must show that her counsel's performance was deficient, such that it fell below an "objective standard of reasonableness." *Id.* at 688. In assessing whether counsel's performance was deficient, courts adopt a "strong presumption" that an attorney's actions fell within the "wide range of reasonable professional assistance." *Id.* at 689. Second, Petitioner must show that her counsel's performance was prejudicial, meaning the defendant was "deprive[d] . . . of a fair trial." *Id.* at 687. To demonstrate such prejudice, Petitioner must show there was a "reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding[s] would have been different." *Id.* at 694. Both of these prongs must be satisfied for Petitioner to obtain the relief she is seeking. *Id.* at 687.

In the plea bargaining context, "claims of ineffective assistance of counsel . . . are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 132 S. Ct. 1399, 1405

6

(2012) (citing *Hill*, 474 U.S. at 57). However, the "prejudice prong of the test is slightly modified" in that Petitioner must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988) (internal quotation marks omitted); *see also id.* (quoting *Hill*, 474 U.S. at 59). This Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be sound trial strategy.'" *Strickland*, 466 U.S. at 689.

In signing the Plea Agreement, Petitioner affirmed that she was satisfied with her counsel's representation and that she was voluntarily pleading guilty to Armed Bank Robbery (Count 1). Plea Agreement, p. 8, ECF No. 34. Additionally, during a sealed conference prior to Petitioner's sentencing hearing, Petitioner's third (court-appointed) attorney specifically argued that Petitioner's prior (privately retained) counsel may have provided ineffective assistance by failing to secure a sentence reduction for her cooperation with the Government. *See* Sentencing Trans., p. 6, ECF No. 63-3 [SEALED]. The Government explained, as discussed *supra*, that she was not eligible for a reduction because she did not have information to offer that was of value to the Government. *Id.* at 9. Accordingly, this Court concluded that any alleged ineffective assistance had "no effect" on Petitioner's actual sentence. *Id.* at 12. Accordingly, for this same reason, Petitioner cannot now establish "prejudice" under *Strickland* with respect to her privately retained counsel.

Petitioner's arguments for ineffective assistance of counsel also fail as to her court-appointed counsel. Petitioner's court-appointed counsel did in fact argue for a sentence

7

reduction due to "mitigating factors." Prior to Person-Robinson's sentencing date, her court-appointed counsel submitted a five-page letter to this Court on behalf of Person-Robinson, outlining various mitigating factors, which she argued "weigh[ed] in favor of a downward variance in this case." Letter, p. 3, ECF No. 49 [SEALED]. Additionally, as discussed *supra*, Petitioner's court-appointed counsel previously argued before this Court that Petitioner should receive a sentence reduction for her assistance to the Government, but did not receive a reduction because of prior counsel's ineffective assistance. As discussed *supra*, Petitioner was not in fact eligible for a reduction because she did not have information of value to the Government. However, Petitioner's court-appointed counsel did act as a diligent advocate in raising the issue. Therefore, Petitioner is unable to overcome the presumption that her "attorney's actions fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Accordingly, Petitioner's first argument for post-judgment relief is without merit.

## II. Petitioner's Argument for a Sentence Reduction on the Basis of Mitigating Circumstances

Petitioner moves for a "reduction in sentence and/or a change in the method of how the balance of her sentence is served." Mot., p. 1, ECF No. 57. However, Petitioner cites no authority entitling her to such relief. Petitioner identifies several "mitigating circumstances," that she claims entitle her to a sentence modification, including "battered woman syndrome" and a "drug addiction." Mot., p. 2–3, ECF No. 57. Additionally, Petitioner argues that "she has worked diligently to improve herself" and provides a list of courses she is taking and programs she is participating in. *Id.* at 3. While Petitioner's efforts at rehabilitation are commendable, they do not entitle her to a sentence reduction.

8

The United States Court of Appeals for the Fourth Circuit has held that, "[i]n the absence of the most exceptional circumstances, a sentence that does not exceed the statutory limits is within the sole discretion of the trial judge . . ." *U.S. v. Truelove*, 482 F.2d 1361, 1361 (4th Cir. 1973). The 2014 United States Sentencing Guidelines Manual, incorporating all guideline amendments, was used to determine Petitioner's offense level of 29. USSG § 1B1.11. During Petitioner's Sentencing, this Court sustained Petitioner's objection to a proposed two-level upward adjustment for abuse of a public or private trust. Gov't Response, Ex. 3, p. 53–54, ECF No. 63. Accordingly, Petitioner's total offense level was reduced to 27. *Id.* at 54. Additionally, this Court considered the list of sentencing factors under 18 U.S.C. § 3553(a), including the nature and circumstances of the offense. Finding no reason to depart from the Advisory Guidelines, this Court sentenced Petitioner to a period of incarceration of 84 months, a sentence within Petitioner's advisory guideline range. J., p. 2–3, ECF No. 54. Petitioner's sentence is within this Court's discretion because it is within the statutory limits and there are no "exceptional circumstances." *Truelove*, 482 F.2d at 1361. Accordingly, Petitioner's second argument for relief fails.

### III. Additional Arguments Raised in Petitioner's Amended Motion to Vacate

#### A. Petitioner's Claim under *Johnson v. United States*, 135 S. Ct. 2251 (2015)

Petitioner's Amended Motion to Vacate raises a new claim for relief in light of the United States Supreme Court's intervening decision in *Johnson v. United States*, 135 S. Ct. 2251 (2015). *See* Amended Mot., p. 1–2, ECF No. 67. This claim is without merit and untimely. A one-year period of limitation applies to Section 2255 petitions. 28 U.S.C. §2255(f). The limitation period runs from the latest of several events, including "the date on which the

9

right asserted was initially recognized by the Supreme Court." 28 U.S.C. §2255(f)(3). Therefore, Petitioner had one year from the *Johnson* decision, which occurred on June 26, 2015, to present this argument to the Court. The Amended Motion to Vacate was filed on August 1, 2016 (ECF No. 67). Although Rule 15 of the Federal Rules of Civil Procedure permits untimely claims that relate back to the same transaction or occurance set forth in a previously filed Motion, this rule does not save Petitioner's *Johnson* claim because no argument pertaining to *Johnson* was previously raised. However, even if Petitioner's *Johnson* claim was timely, it is without merit.

Petitioner claims that "the Supreme Court's decision in *Johnson v. United States* retroactively invalidates the district court's determination . . . that [Petitioner] had committed a 'crime of violence'" under the Armed Career Criminal Act. Amended Mot., p. 1, ECF No. 67. However, Petitioner was not sentenced pursuant to the Armed Career Criminal Act, 18 U.S.C. 924(e). At no time did this Court make a finding that Petitioner had committed a "crime of violence." As discussed *supra*, this Court sentenced Petitioner to 84 months incarceration, a sentence within her advisory guideline range, based on a Criminal History category of 1 and a Total Offense level of 27. Additionally, Petitioner was charged with and pled guilty only to Armed Bank Robbery, in violation of 18 U.S.C. § 2113(a), (d), and (f). Petitioner was not charged with Hobbs Act Robbery or Use or Possession of a Firearm During or in Relation to a Crime of Violence, which has as an element that Petitioner committed a "crime of violence." Therefore, Petitioner's *Johnson* claim fails.

B. <u>Petitioner's Argument Based on Amendment 794 to the United States Sentencing Guidelines</u>

Petitioner argues that this Court should grant her a "minor role [sentence] reduction," under Amendment 794 to the United States Sentencing Guidelines. Amended Mot., p. 2, ECF No. 67. However, Amendment 794 did not go into effect until November 1, 2015, over one year after Petitioner was sentenced.

The United States Sentencing Commission Guidelines Manual states that "[t]he court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." U.S.S.G. § 1B1.11(a) (Nov. 2015). While some amendments to the Sentencing Guidelines are made retroactive, Amendment 794 is not one of them. U.S.S.G. § 1B1.10(d). Moreover, even if Amendment 794 were retroactively applicable, Petitioner's sentence would be unaffected by Amendment 794. Amendment 794 helps sentencing courts identify "low-level offenders" without a "proprietary interest in the criminal activity" who may be considered for a "mitigating role adjustment." U.S.S.G. App. C (Nov. 2015). Petitioner would not qualify for a "mitigating role adjustment." Petitioner played an essential role in the Armed Bank Robbery because she provided necessary information to Washington about the bank layout, bank procedures, and the tellers who worked at the bank. Plea Agreement, Attachment A, p. 9, ECF No. 34. This Court correctly applied the Sentencing Guidelines as they existed at the time of Petitioner's sentencing. Petitioner's argument for retroactive application of Amendment 794 fails. Consequently, Petitioner is not entitled to post-judgment relief.

11

## CONCLUSION

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 57) is DENIED, and Petitioner's Amended Motion to Vacate (ECF No. 67) is also DENIED.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, this Court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A separate Order follows.

Dated: April 17, 2017

_____
Richard D. Bennett
United States District Judge